UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIM Y.,

        Plaintiff,

       v.                                    **DECISION AND ORDER**
                                                      20-CV-6726S
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

       1.      Plaintiff Kim Y.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.      Plaintiff filed her application for benefits under Title II of the Act on May 8, 2018. (R.[2] at 66.) Plaintiff alleged disability beginning on October 20, 2016, due to "lower leg level," "right leg" pain, and chronic Lyme disease. (R. at 67.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ JuanCarlos Hunt held a hearing on October 17, 2019, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 31-65.) Vocational expert David Van Winkle also testified at the hearing. At the time of the hearing, Plaintiff was 51 years old, with a college education and past work experience as a registered nurse, office manager, and basic EMT. (R. at 76-77.)

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

3. The ALJ considered the case de novo and, on December 13, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 15-26.) On July 20, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on September 17, 2020, challenging the Commissioner's final decision.[3]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 11.) Plaintiff filed a response on March 2, 2022 (Docket No. 12), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5. A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's December 13, 2019, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6.	"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.	The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.	The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant

3

> has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application date of October 20, 2016. (R. at 17.) At step two, the ALJ found that Plaintiff has the severe impairments of residual effects of right ankle injury, status-post surgery, and degenerative joint disease of the left knee, status-post surgery. (R. at 18.)

11. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 21.)

12. Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work except that:

> she frequently can balance, crouch, kneel, crawl, stoop, and climb ramps, stairs, ladders, and scaffolds; she occasionally can push, pull, and operate foot controls bilaterally; and, she will be off task 10 percent of the day due to, for example, the need to alternate positions and/or use the bathroom.

(R. at 21.)

13. At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as an office manager, a job that is classified as sedentary, both as actually and as generally performed, and that, even if her residual functional capacity were reduced to a sedentary exertional limitation, she could still perform this past work. (R. at 25-26.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 26.)

14. Plaintiff argues that the ALJ improperly evaluated the opinion evidence of record and that the ALJ's off-task finding is not supported by the record. Defendant argues that the ALJ's RFC is supported by substantial evidence.

15. Plaintiff first argues that the ALJ erred in finding three medical opinions assessing her with moderate standing limitations "somewhat persuasive" but then finding that she could do light work.

16. In making an RFC determination, the ALJ must consider all relevant medical and other evidence. An RFC assessment may not perfectly correspond to one medical

opinion, and the ALJ is entitled to weigh all of the evidence in the record to make the RFC finding. Michele S. v. Comm'r of Soc. Sec., No. 20-CV-547-EAW, 2021 WL 4189705, at *6 (W.D.N.Y. Sept. 15, 2021) (citing Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). It is within the ALJ's discretion to resolve genuine conflicts in the evidence. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). In other words, "[e]ven where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, [] the ALJ [is] entitled to weigh all of the evidence available to make a residual functional capacity finding …consistent with the record as a whole." Trepanier v. Comm'r of Soc. Sec. Admin., 752 F. App'x 75, 79 (2d Cir. 2018) (quoting Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")).

17.　　Plaintiff experienced right ankle pain for a period after tendon release surgery in December 2015. (R. at 276.) At postoperative visits, Dr. Adolph Flemister noted that Plaintiff was experiencing pain with prolonged standing and walking. (R. at 276, 281, 283.) On March 8, 2016, Dr. Flemister indicated that her nerves would likely return to normal after surgery, and on April 19, 2016, he noted that Plaintiff's foot pain was slowly improving. (R. at 483-84.) On October 12, 2016, for example, Dr. Luke Loveys noted that Plaintiff had significant hypersensitivity through the sural nerve distribution and positive Tinel's sign. (R. at 264.) On the other hand, Dr. Loveys also noted that motion was performed without discomfort or crepitance (cracking). (Id.) Plaintiff's gait was mildly antalgic to the right on October 26, 2016. (R. at 286.) On May 5, 2017, Dr. Knapp, a neurologist, noted significant hyperplastic pain in the distribution of the right sural nerve. (R. at 270.)

18. Plaintiff underwent left knee surgery in March 2016. (R. at 394.) She reported on July 11, 2016, that she was very happy with her progress following this surgery. (R. at 400.)

19. In 2018 and beyond, Plaintiff almost never mentioned ankle pain or symptoms at medical office visits. Instead, she largely sought treatment for abdominal pain. (R. at 298, 310.) On December 4, 2018, at a general physical exam, Plaintiff exhibited a normal gait, and motor strength in her lower extremities was intact. (R. at 434.) On March 8, 2019, Plaintiff sought a consultation for revision of an abdominal scar. She mentioned her 2015 ankle surgery but the record contains no mention of ankle pain or inability to ambulate, and her gait was stable. (R. at 437-439.) On July 30, 2019, Plaintiff sought treatment after she injured her thumb playing golf. (R. at 453.) She stated that this was her first time playing golf in years. The record of this visit does not contain references to ankle pain or problems with prolonged standing during golf.

20. On August 7, 2018, Dr. Harbinder Toor performed a Consultative Neurological Examination. He observed that Plaintiff had normal gait and station, but that she walked on her heels and toes with slight difficulty and that tandem walking heel-to-toe was difficult. (R. at 382.) Plaintiff used no assistive device, needed no help getting on or off the exam table, and was able to rise from her chair without difficulty. (Id.) Dr. Toor noted a scar with tenderness from her ankle surgery. (R. at 383.) Her right ankle plantar flexion was 20 degrees and dorsiflexion was 10 degrees.[4] (Id.) Strength in her proximal and distal muscles was 5/5, heel to shin testing was normal and there was no muscle

---

[4] One source gives a normal range of plantar flexion (downward movement) as 0 degrees to 40 degrees and dorsiflexion (upward movement, towards the shin) as 0 degrees to 20 degrees. https://www.verywellhealth.com/what-is-normal-range-of-motion-in-a-joint-3120361, last accessed 7/7/2022 at 1:56 p.m.

atrophy. (Id.) Dr. Toor opined that Plaintiff had a moderate limitation standing, walking, lifting, carrying, and balance issues because of the injury and pain in her right lower leg, but had no other medical limitations. (Id.)

21. On August 14, 2018, Agency Medical Consultant Dr. M. Puttanniah reviewed the record and opined that Plaintiff could stand or walk slightly less than two hours per day, and sit for about six hours of an 8-hour workday. (R. at 75.)

22. On January 17, 2019, Agency Medical Consultant Dr. Sai Nimmagadda reviewed the record and concurred with Dr. Puttanniah's opinion. (R. at 385-86.)

23. The ALJ found all three opinions "somewhat persuasive." (R. at 24.) He noted that Dr. Toor's examination provided support for his opinion, and his opinion was generally consistent with the other medical evidence of record. The ALJ also noted that the agency medical consultants had reviewed the record, their opinions were fairly well supported by their analysis of the record, and were somewhat consistent with the record as a whole. (Id.) Nonetheless, the ALJ noted that Plaintiff also had full motor strength, good ankle and hind foot motion, no instability, and mostly normal gait. (Id.) Additionally, the ALJ noted that Plaintiff was able to play golf and her daily activities included personal care, care for dogs, preparing meals, laundry, vacuuming, driving a car, shopping in stores, running errands, and going to baseball games, movies and church. (R. at 25.) Thus, the ALJ found that Plaintiff was capable of a range of light work.

24. This Court finds that the ALJ properly resolved conflicts in the record and came to an RFC determination that is consistent with the record as a whole. The ALJ considered both the limitations and the capabilities reflected in the record as a whole, noting both the residual effects of Plaintiff's ankle surgery and her full motor strength,

good ankle and hind foot motion, mostly normal gait, and the records of multiple office visits at which Plaintiff made no mention of ankle pain or inability to stand. (R. at 24.) The ALJ appropriately considered the entire record and made an RFC finding that was consistent with it. The ALJ was not obliged to adopt Dr. Toor's or the agency medical consultants' opinions full cloth, but rather was obliged to consider the record as a whole. This Court finds no error in the ALJ's RFC determination.

25. Plaintiff also argues that the ALJ's finding that she would be off-task 10% of the time is not grounded in the record. It is true that courts have rejected such specific percentage findings where they are unsupported by the record. See, e.g., Cosnyka v. Colvin, 576 F. App'x. 43, 46 (2d Cir. 2014) (holding that there was no evidentiary basis for the ALJ's conclusion that an applicant needed only six-minutes off per hour); Mariani v. Colvin, 567 F. App'x. 8, 10 (2d Cir. 2014) (holding that there was not substantial evidence in the record supporting the ALJ's conclusion that an applicant could use his hand fifty-percent of the time). But where a limitation is supported by the record, it is not error to assign a particular percentage range to illustrate that limitation. Johnson v. Colvin, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0–10%) to illustrate Johnson's limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence.").

26. Here, Plaintiff testified that standing and sitting were uncomfortable for her, and that she experienced episodes of nausea and vomiting. (R. at 45-46, 49-50.) The ALJ took these limitations into account by finding that Plaintiff would be off-task up to 10% of the time because of her need to shift positions and use the bathroom (presumably due to her abdominal problems). (R. at 21.) The ALJ was entitled "to weigh all of the evidence

available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). This Court finds no error in the ALJ's assignment of a specific percentage to reflect Plaintiff's limitations in sitting and standing and her need to address her stomach problems.

27.     Finally, even if the ALJ's assignment of a light RFC was error, it was harmless error because the record reflects, and Plaintiff does not contest, that she was capable of sedentary work. The Vocational Expert classified Plaintiff's past relevant work as an office manager as sedentary, both as performed in the national economy and as performed by Plaintiff. (R. at 57.) And the ALJ found that Plaintiff was capable of performing this past work. (R. at 25.) Plaintiff does not argue that she would not be able to perform sedentary work such as her prior job. Burt v. Berryhill, No. 17-CV-00922F, 2019 WL 580589, at *4 (W.D.N.Y. Feb. 13, 2019) (citing McClam v. Astrue, 8:07-755-TLW-BHH, 2008 WL 4200588, at * 6 (D.S.C. Sept. 5, 2008)). Because the ALJ found—and Plaintiff does not challenge—that Plaintiff could perform her past work as performed at the sedentary level, his determination that she is capable of light work is, at most, harmless error.

28.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:     July 21, 2022
           Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
